**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ZAK SHAIK,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:25-CV-688-P** |
| | § | |
| **IMPERIUM AI, ET AL.,** | § | |
| | § | |
| ***Defendants.*** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE REGARDING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

This case was referred to the United States Magistrate Judge pursuant to the provision of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Zak Shaik ("Shaik" or "Plaintiff"), proceeding *pro se*, filed this action on June 27, 2025, against Defendants Imperium AI ("Imperium") and Imperium's principal, Shazir Mucklai ("Mucklai"), who lives in Texas (collectively "Defendants").[1] On July 23, 2025, the Court ordered Plaintiff to file an amended complaint [doc. 9]. On August 11, 2025, Plaintiff filed his First Amended Complaint ("Plaintiff's First Amended Complaint ("Pl.'s First Am. Compl.") [doc. 11], which is the live pleading in this matter. In his First Amended Complaint, Plaintiff, who also lives in Texas, alleges the following causes of action: (1) a violation of the civil Racketeer Influenced

[1] The Court notes that Plaintiff also named eight other individuals as Defendants. (*See* Plaintiff's First Amended Complaint at 1.) However, as there is no proof of service on these individual Defendants, the Court recommends that they be dismissed for want of prosecution pursuant to Federal Rule of Civil Procedure 4(m).

and Corrupt Organization Act ("RICO") pursuant to 18 U.S.C. § 1962(c)[2] against Mucklai; (2) a violation of 42 U.S.C. § 1981 against Mucklai and Imperium AI based on "racially hostile interference when Plaintiff exercised contract right;" (3) breach of contract under Texas state law against Mucklai and Imperium AI; (4) fraud/fraudulent inducement under Texas state law against Mucklai and Imperium AI; (5) unjust enrichment under Texas state law, as an alternate claim, against Mucklai and Imperium AI; and (6) intentional infliction of emotional distress ("IIED"), as under Texas state law, as an alternate claim, against Mucklai and Imperium AI. (Pl.'s First Am. Compl. at 3-5). Plaintiff is seeking, *inter alia*, compensatory damages, treble damages, punitive damages, equitable restitution, injunctive relief, and costs. (*Id.* at 5).

In their Motion to Dismiss Plaintiff's First amended Complaint ("Motion to Dismiss") [doc. 53], Defendants argue that, pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6), Plaintiff's claims against them should be dismissed because Plaintiff has failed to state a claim for civil RICO pursuant to 18 U.S.C. § 1962(c) or for racially hostile interference with a contract under 42 U.S.C. § 1981. (Defendants' Motion to Dismiss ("Defs.' Mot. to Dismiss") at 5-8). Defendants also argue that the Court should not exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. (*Id.* at 5, 8-9).

## II. LEGAL STANDARD

Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must be interpreted in conjunction with Rule 8(a), which sets

---

[2] This section states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

forth the requirements for pleading a claim for relief in federal court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (holding that Rule 8(a)'s simplified pleading standard applies to most civil actions). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The Court need not credit bare conclusory allegations for a "formulaic recitation of the elements of a cause of action." *Id.* Rather, "[a] claim has facially plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. A court is permitted, however, to rely on documents incorporated in the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

A claim alleging fraud must satisfy the higher pleading requirement set forth in Rule 9(b), which mandates that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Put simply, Rule 9(b) requires the 'who, what, when, where, and

how' [of the alleged fraud] to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

## III. LEGAL ANALYSIS

### A. Civil RICO Claim

As set forth above, Defendants argue in their Motion to Dismiss that Plaintiff's civil RICO claim should be dismissed for failure to state a claim. (Defs.' Mot. to Dismiss at 7.) "Reduced to its three essential [elements], a civil RICO claim must involve: (1) a *person* who engages in (2) a *pattern of racketeering activity* (3) connected to the acquisition, establishment, conduct, or control of an *enterprise*." *McMullan v. Cook*, No. 96-30188, 1997 WL 114880, at *1, 109 F.3d 765 (5th Cir. 1997) (per curiam) (quoting *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988), *cert denied*, 489 U.S. 1079 (1989) (citing 18 U.S.C. § 1962) (emphasis in original)). To establish a pattern of racketeering activity, Plaintiff must show a relationship between two or more predicate[3] criminal acts, which in this case are alleged to be "wire fraud and extortionate threats,"[4] and the threat of continuing activity. *See Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 429 U.S. 229, 239 (1989)). In other words, "[t]he predicate acts must be (1) related and (2) amount to or pose a threat of continued criminal conduct." *Collins v. Seago*, No. 11-130-JJB, 2011 WL 1743658, at *2 (M.D. La. May 6, 2011) (internal quotation marks and citations omitted); *see Abraham v . Singh*, 480 F.3d 351, 355 (5th Cir. 2007). These essential elements prevent civil RICO claims from "becoming a surrogate for garden-variety fraud actions properly brought under state law" and "keep civil RICO focused on the long term criminal conduct Congress intended it to address." *Malvino*, 840 F.3d at 231

[3] "The acts comprising racketeering activity are commonly known as predicate acts." *CADG Erwin Farms, LLC v. Ipour*, No. 3:22-cv-02896-M, 2024 WL 1394501, at *3 (N.D. Tex. Mar. 31, 2024).

[4] (*See* Pl.'s First Am. Compl. at 3-4.)

(citing *Tabas v. Tabas*, 47 F.3d 1280, 1310 (3d. Cir. 1995)). In addition, because Plaintiff's RICO claim is partially based on wire fraud, Plaintiff must also satisfy the heightened pleading requirement of Rule 9(b) as to his allegations relating to such wire fraud. *See Energium Health v. Gabali*, No. 3:21-CV-2951-S, 2023 WL 6392631, at *5-7 (N.D. Tex. Sept. 26, 2023).

In this case, Plaintiff alleges, *inter alia*, that, on May 14, 2025, he "received an [unsolicited] email offering a '$500 Guaranteed PR Special' with promised placements (e.g. Yahoo Finance, Business Insider)." (Pl.'s First Am. Compl. at 3.) Plaintiff further asserts that, while on the phone with Mucklai, Plaintiff paid $500 to "lock in" the offer and, then immediately made additional payments for items Mucklai "immediately up[sold]." (*Id.*) Plaintiff claims that, thereafter, Defendants failed to perform as promised, made threats after Plaintiff requested a refund, and failed to provide a refund. (*Id.*) In support of his RICO claim, Plaintiff alleges:

> 19. Enterprise: An association-in-fact ("Imperium Enterprise") with a common purpose to obtain funds through deceptive solicitations, emailed payment links, and coercive threats.
>
> 20. Conduct: Defendants conducted/participated in the enterprise's affairs through a pattern of racketeering—multiple acts of wire fraud (emails/Stripe links, and extortionate threats).
>
> 21. Continuity: The structure/repetition shows closed-ended and open-ended continuity under *H.J. Inc. v. Northwestern Bell*, 492 U.S. 229 (1989).
>
> 22. Injury: Plaintiff's business/property were injured ($1,650 loss; time diversion). Relief under 18 U.S.C. § 1964(c) (including treble damages and fees).

(Pl.'s First Am. Compl. at 4 (internal citations omitted) (emphasis omitted).

Having carefully reviewed Plaintiff's First Amended Complaint, it is clear that Plaintiff's RICO claim against Defendants fails as "it is apparent that [such] claim lacks any arguable basis in law or fact." *Collins*, 2011 WL 1743658, at *2. "Accepting the factual allegations as true, it is apparent that this is simply a contractual dispute arising from a [failed] business transaction

between [P]laintiff and [Defendants].” *Id.* RICO was passed by Congress to address “long-term criminal conduct”[5] and not to “transform[ ] business-contract or fraud disputes into federal RICO claims.”[6]

In addition, even assuming that Plaintiff’s RICO claim had any arguable basis in law or fact, such claim would also fail on the second element, which requires allegations of a pattern of racketeering activity. To begin with, the allegations regarding the first predicate act—wire fraud[7]—are subject to the heightened pleading standard of Rule 9(b). *See Energium Health*, 2023 WL 6392631, at *6 (“When alleged as a RICO predicate, wire fraud is also subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).”) (internal quotation marks and citations omitted).) At the very least, Plaintiff has failed to allege with particularity exactly what in the unsolicited solicitation email or other correspondence Plaintiff received between May 14, 2025, and May 27, 2025, was fraudulent or that Defendants had the requisite intent to defraud.[8] As a pattern of racketeering involves at least two predicate acts, Plaintiff’s failure to plead wire fraud with particularity, which is one of his two predicate acts, is fatal to his RICO claim. *See*

[5] *PrevMED, Inc. v. MNM-1997, Inc.*, No. 3:14-CV-3960-D, 2015 WL 4162729, at *5 (N.D. Tex. July 10, 2015).

[6] *CADG Erwin Farms*, 2024 WL 1394501, at *5.

[7] “The elements of . . . wire fraud . . . are ‘(1) a scheme to defraud that employed false material representations, (2) the use of mail or interstate wires in furtherance of the scheme, and (3) the specific intent to defraud.’” *6315 Magazine, LLC v. Flot Nola, LLC*, No. 20-1472, 2020 WL 4922361, at *8 (E.D. La. Aug. 21, 2020) (quoting *United States v. Hoffman*, 901 F.3d 523, 545 (5th Cir. 2018)). “To constitute wire fraud under 18 U.S.C. § 1343, the transmission must occur in ‘interstate or foreign commerce.’” *Murphy v. Grisaffi*, No. 3:04-CV-0134-B, 2005 WL 598015, at *3 (N.D. Tex. Mar. 14, 2005) (“An examination of Plaintiffs’ Complaint reveals that Plaintiffs have not alleged any specific interstate transmissions that would support a wire fraud claim.”).

[8] For example, Plaintiff attempts to argue that the following incidents show fraud: (1) May 14, 2025, unsolicited email offered an undelivered “$500 Guaranteed PR Special” with “promised placements” and (2) failure to give a refund after receiving an email stating that the refund had been processed. (*See generally* Pl.’s First Am. Compl. and Exhibits.) Such allegations, however, are, at best, speculative and conclusory because the entire business relationship between Plaintiff and Defendants apparently only lasted approximately two weeks and “[i]t is hornbook law in Texas that the mere failure to perform a contract is not evidence of fraud.” *Energium Holding LLC v. Ascension MyHealth Urgent Care*, No. 3:21-CV-2951-S, 2024 WL 4876957, at *7 (N.D. Tex. Nov. 22, 2024).

*Energium Health*, 2023 WL 6392631, at *3 (stating that, because a pattern of racketeering activity requires at least two predicate acts, "if Plaintiff fails to plead the predicate acts with particularity, it cannot establish a pattern of racketeering activity").

Moreover, "there is no interstate connection alleged as to the email[s that comprise the predicate acts of wire fraud or extortionate threats],[9] and the Court cannot assume an interstate connection, especially since both [Defendants] and [Plaintiff are] located in [Texas]." *6315 Magazine, LLC*, 2020 WL 4922361, at *8; *see CADG Erwin Farms, LLC*, 2024 WL 1394501, at *7 (N.D. Tex. Mar. 31, 2024) ("As an initial matter, [as to the RICO claim], the Complaint does not identify a specific single instance of *interstate* use of wires, and instead simply refers to communications made 'by email,' which the Court concludes is insufficient to satisfy the interstate element."). Consequently, the Court **FINDS and CONCLUDES** that Plaintiff has failed to state a claim pursuant to RICO against Defendants. Thus, the Court **RECOMMENDS** that Defendants' Motion to Dismiss on this claim be **GRANTED** and the RICO claim be **DISMISSED WITH PREJUDICE**.

### B. Racial Interference with a Contract Claim Pursuant to 42 U.S.C. § 1981

The second issue in the case is whether Plaintiff has stated a claim against Defendants under 42 U.S.C. § 1981 for unlawful discrimination. Pursuant to Section 1981, "[a]ll persons within the jurisdiction of the United States have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. 1981(a). The right to "make and enforce contracts" includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

[9] An effect on interstate commerce is [also] a required element of extortion." *CADG Erwin Farms, LLC*, 2024 WL 1394501, at *4.

"To establish a *prima facie* case under § 1981, a plaintiff must show that (1) he . . . is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Pullins v. Hancock Whitney Bank*, 512 F. Supp. 3d 647, 657 (M.D. La. 2021) (internal quotation marks and citations omitted). While a plaintiff "need not prove a prima facie case of discrimination to survive a Rule 12(b)(6) motion to dismiss, [h]e still must allege facts sufficient to state all the elements of [his] claim." *Jones v. FedEx Off. and Print Servs.*, No. 3:16-CV-02099-N, 2017 WL 10126188, at *2 (N.D. Tex. Mar. 23, 2017) (internal quotation marks and citations omitted); *see Hung Nguyen v. Ellwood Tex. Forge Houston, LP*, No. 4:16-cv-03311, 2017 WL 10777625, at *4 (S.D. Tex. May 17, 2017) ("Plaintiff is not required to plead facts that comport with the *prima facie* case requirements set out in *McDonnell Douglas* [to state a claim for race and aged based discrimination under, *inter alia*, Section 1981].").

As to discriminatory intent on the basis of race, "naked allegation[s] of discriminatory intent are too conclusory to survive a motion to dismiss." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). "Plaintiffs have the burden of initially pleading facts, that taken as true, permit the court to plausibly infer that 'but for race, [Plaintiff] would not have suffered the loss of a legally protected right." *Randall v. PNC Fin. Servs. Grp.*, No. 4:23-CV-00263-O-BP, 2024 WL 646363, at *3 (N.D. Tex. Fed. 12, 2024), *report and rec. adopted*, 2024 WL 1018538 (N.D. Tex. Mar. 8, 2024). "[D]iscriminatory motive may be—and commonly is—demonstrated by circumstantial evidence." *Carter v. Dillard's Inc.*, No. 24-510-SDD-SDJ, 2025 WL 790306, at *3 (M.D. La. Mar. 12, 2025). "Alleging that 'similarly situated non-minorities received better treatment could create the necessary inference and set the predicate for

establishing the section 1981 claim.'" *Randle*, 2024 WL 646363, at *3 (quoting *Body by Cook, Inc.*, 869 F.3d at 386 (cleaned up)).

In, this case Plaintiff alleges that he "engaged in protected contractual activity" by making a purchase and then requesting a refund under such contract. (Pl.'s First Am. Compl. at 4 (emphasis omitted); *see also* Pl.'s First Am. Compl. at 3.) Plaintiff claims that, as a result of such request, Mucklai issued racial epithets and hostility "in direct retaliation for Plaintiff's attempt to enforce a contract right." (Pl.'s First Am. Compl. at 4 (emphasis omitted); *see also* Pl.'s First Am. Compl. at 3.) However, contrary to Plaintiff's claims, he pleads no non-conclusory facts that Defendants intentionally discriminated against Plaintiff regarding the contract because of Plaintiff's race. While the racial slurs in the text messages and emails attached to the Plaintiff's First Amended Complaint are reprehensible, "Section 1981 does not protect against racial insults in general; rather, it prohibits intentional racial discrimination in certain enumerated activities." *Muick v. Wicks*, No. 3:01-CV-0130-M, 2001 WL 285244, at *3 (N.D. Tex. Mar. 20, 2001). In addition, Plaintiff has made no allegations that similarly-situated non-minorities received better treatment. *See Randle*, 2024 WL 646363, at *4. As Plaintiff has not alleged any non-conclusory facts that that Defendants sought to prevent the enforcement or termination of the contract because of Plaintiff's race, the Court **FINDS and CONCLUDES** that Plaintiff has failed to state a Section 1981 claim against Defendants. Thus, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** on this claim and the Section 1981 claim be **DISMISSED WITH PREJUDICE**.

### C. <u>Remaining State Law Claims and Supplemental Jurisdiction</u>

As the Court is recommending dismissal of Plaintiff's federal claims under Civil RICO and § 1981, which are the sole source of this Court's original jurisdiction,[10] the next issue is whether it should exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. A district court may decline to exercise supplemental jurisdiction over a claim in certain circumstances, including when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "District courts enjoy wide discretion in determining whether to retain jurisdiction over a state claim once all federal claims are dismissed." *Heggemeier v. Caldwell Cnty., Tex.*, 826 F.3d 861, 872 (5th Cir. 2016) (internal quotation marks and citations omitted). Courts should consider the relevant language in 28 U.S.C. § 1367 and "the common law factors of judicial economy, convenience, fairness, and comity." *Heggemeier*, 826 F.3d at 872 (internal quotation marks and citations omitted).

After reviewing all the factors, the Court **FINDS and CONCLUDES** that it should decline to exercise supplemental jurisdiction over any remaining claims, as is the general rule. *See* 28 U.S.C. §§ 1367(c)(2), (3). The Court notes that judicial economy and convenience favor declining supplemental jurisdiction because the lawsuit is still in its relatively early states, no trial has been set, there is nothing to indicate that either party would be prejudiced by dismissing the case, and comity weighs in favor of declining supplemental jurisdiction. *See Wells v. Lottery.com, Inc.*, No. 1:23-CV-1081-RP, 2024 WL 5036624, at *5 (W.D. Tex. Nov. 15, 2024), *rep. and rec. adopted*, 2025 WL 300618 (W.D. Tex. Jan. 24, 2025), *aff'd* 2025 WL 2265447 (5th Cir. Aug. 6, 2025)

---

[10] In his First Amended Complaint, Plaintiff alleges that the Court has jurisdiction based on federal question jurisdiction as to Plaintiff claims under RICO and Section 1981 and supplemental jurisdiction over his state-law claims. (Pl.'s First Am. Compl. at 1.) In addition, Plaintiff, in his response to Defendants' Motion to Dismiss states that this "case proceeds on **federal question** jurisdiction . . . based on civil RICO and § 1981, with supplemental jurisdiction under § 1367." (Plaintiff's Response in Opposition to Defendants' Motion to Dismiss at 5 (emphasis in original).)

("Federal court often are not as well equipped for determinations of state law as are state courts[.]") (internal quotation marks and citations omitted). Thus, the Court **FINDS, CONCLUDES, and RECOMMENDS** that Plaintiff's state-law claims be **DISMISSED WITHOUT PREJUDICE**.

### D. Leave to Amend

On a motion to dismiss for failure to state a claim, a "plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). Further, a *pro se* litigant should generally be offered an opportunity to amend his complaint before it is dismissed. *See Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). In this, case, however, Plaintiff has already been given an opportunity to file an amended complaint. The Court finds that any further amendment would be futile as Plaintiff has already pleaded his best case. *See Brewster*, 587 F.3d at 768 (quoting *Bazrowx*, 136 F.3d at 1054); *Clements v. Bank*, No. 6:20-CV-00821, 2021 WL 4483829, at *3 (W.D. La. Sept. 29, 2021) ("Since [Plaintiff] has previously been granted leave to amend his complaint to cure these defects, the Court concludes that any further attempt to an amendment would be futile.").

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Defendants' Motion to Dismiss [doc. 53] be **GRANTED** as to Plaintiff's claims under RICO and § 1981 and that such claims be **DISMISSED WITH PREJUDICE**.

It is further **RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims against Defendants. It is further **RECOMMENDED** that these claims be **DISMISSED WITHOUT PREJUDICE**.

**NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

**ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **July 24, 2026**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 10, 2026.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE